UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EV&EX AGENCY, LLC,
Plaintiff,

-v-

DERSE, INC., *et al.*,
Defendants.

26-CV-2291 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Ev&Ex Agency, LLC ("Ev&Ex") brought this action against Defendants Derse, Inc. ("Derse") and Nathan Siblock, seeking an injunction, legal fees and expenses, and damages for claims of breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, and the faithless servant doctrine. (*See generally* ECF No. 7 ("Compl.").) Now before the Court is Defendants' motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(2). (ECF No. 10.) For the reasons that follow, Defendants' motion is denied.

## I. Background

The following facts are taken from the complaint and are presumed true for the purposes of this motion. *See Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013) (per curiam).

Ev&Ex is a global events and experiences agency headquartered in New York, New York that specializes in providing strategic event management and production services. (Compl. ¶¶ 4, 9.) In or around January 2023, Ev&Ex hired Nathan Siblock as its Senior Vice President, Client Service, in which role Siblock oversaw the agency's new business and client service efforts, presumably from his residence in Texas. (*Id.* ¶¶ 6, 11-12.) On or around August 9, 2025, Ev&Ex and Derse, a competing agency headquartered in Milwaukee, entered into a non-

solicitation agreement ("NSA") in anticipation of Derse's working with some of Ev&Ex's clients. (*Id.* ¶¶ 5, 14.) Pursuant to the NSA, Ev&Ex and Derse agreed that they would not, among other things, "attempt to divert or take away" or "hire, employ, [or] engage" any customers or employees of the other party. (*Id.* ¶ 15.)

On December 12, 2025, Siblock resigned from Ev&Ex; he joined Derse the following business day. (*Id.* ¶¶ 16-17.) In the days and weeks immediately following Siblock's departure from Ev&Ex, at least six clients and one active prospect either notified Ev&Ex that they were leaving the agency or stopped communicating with the agency entirely. (*Id.* ¶ 19.) At least three of Ev&Ex's clients have since moved to Derse. (*Id.*) Ev&Ex alleges that, upon information and belief, Derse solicited Siblock to leave Ev&Ex, and that Siblock subsequently induced Ev&Ex's clients to hire Derse, all in violation of the NSA. (*Id.* ¶¶ 18, 20-21.)

## II. Procedural History

On March 2, 2026, Ev&Ex filed suit in the Supreme Court of the State of New York, New York County. (*See* Compl.) On March 19, 2026, Defendants removed the case to this Court pursuant to 28 U.S.C. § 1332. (ECF No. 1.) On March 25, 2026, Defendants moved to dismiss Ev&Ex's complaint for lack of personal jurisdiction (ECF No. 10) and filed an accompanying memorandum of law in support (ECF No. 11). Ev&Ex filed its opposition on April 14, 2026 (ECF No. 18 ("Opp.")), and Defendants filed their reply in further support of dismissal on April 24, 2026 (ECF No. 21 ("Reply")).

## III. Legal Standard

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). "Where, as here, jurisdictional discovery has not been conducted, the plaintiff need only make a prima facie showing by his

pleadings and affidavits that jurisdiction is proper." *Kreit v. Byblos Bank S.A.L.*, No. 22-CV-10751, 2023 WL 6977448, at *3 (S.D.N.Y. Oct. 22, 2023), *aff'd*, No. 23-7840, 2025 WL 338194 (2d Cir. Jan. 30, 2025); *see also MacDermid v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (recognizing that, prior to trial, "a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials").

When evaluating a Rule 12(b)(2) motion, the Court must "construe the pleadings and affidavits in the light most favorable to plaintiff[], resolving all doubts in [its] favor," *see Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008), and must accept the allegations in the complaint as true "to the extent they are uncontroverted" by Defendants' affidavits, "which the district court may also consider," *GlaxoSmithKline LLC v. Laclede, Inc.*, No. 18-CV-4945, 2019 WL 293329, at *3 (S.D.N.Y. Jan. 23, 2019). The Court need not, however, "draw argumentative inferences in the plaintiff's favor" or "accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (citations omitted).

## IV. Discussion

Defendants contend that Ev&Ex has failed to make a prima facie showing that Defendants are subject to the Court's personal jurisdiction. "There are two ways that New York exercises personal jurisdiction over non-residents: general jurisdiction pursuant to N.Y. CPLR § 301 or specific jurisdiction pursuant to N.Y. CP[LR] § 302." *Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792, 798 (S.D.N.Y. 2015) (Nathan, J.) (quotation and alteration omitted), *aff'd*, 660 F. App'x 43 (2d Cir. 2016) (summary order). Because the Court concludes that specific jurisdiction exists over Defendants, it declines to address Ev&Ex's arguments related to general jurisdiction.

Courts evaluating specific jurisdiction engage in a two-step process: "First, under the Federal Rules of Civil Procedure, the Court applies the forum state's long-arm statute." *Creative Photographers, Inc. v. Grupo Televisa, S.A.B.*, 763 F. Supp. 3d 618, 630 (S.D.N.Y. 2025) (citing *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010)). "If the long-arm statute permits personal jurisdiction, the second step is to analyze whether personal jurisdiction comports with the Due Process Clause of the United States Constitution." *Chloe*, 616 F.3d at 164.

**A. New York's Long-Arm Statute**

Ev&Ex argues that specific jurisdiction exists over Defendants pursuant to N.Y. C.P.L.R. § 302(a)(1), which permits the exercise of personal jurisdiction "over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. § 302(a)(1). (Opp. at 11.) This provision confers jurisdiction if two requirements are met. First, the defendant must have transacted business in New York by "purposefully avail[ing] itself of the privilege of conducting activities within New York, thereby invoking the benefits and protections of its laws." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 61 (2d Cir. 2012) (quotation marks and citations omitted). "To determine whether a party has 'transacted business' in New York, courts must look at the totality of circumstances concerning the party's interactions with, and activities within, the state." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 105 (2d Cir. 2006) (quotation marks omitted). "CPLR 302(a)(1) is a 'single act statute'; accordingly, physical presence is not required and one New York transaction is sufficient for personal jurisdiction." *C. Mahendra (N.Y.), LLC v. Nat'l Gold & Diamond Ctr., Inc.*, 125 A.D.3d 454, 457 (1st Dep't 2015).

Second, there must be an "articulable nexus" or "substantial relationship" between the plaintiff's claim and the defendant's transaction in New York. *Best Van Lines, Inc. v. Walker*,

490 F.3d 239, 246 (2d Cir. 2007). The New York Court of Appeals has "explained that the nexus prong of § 302(a)(1) does not demand a causal connection between the defendant's New York transaction and the plaintiff's claim, but instead requires only a 'relatedness . . . such that the latter is not completely unmoored from the former.'" *Strauss v. Credit Lyonnais, S.A.*, 175 F. Supp. 3d 3, 19 (E.D.N.Y. 2016) (quoting *Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 339 (2012)). "This 'relatively permissive' nexus is satisfied where 'at least one element [of the plaintiff's claim] arises from the [defendant's] New York contacts.'" *Id.* (quoting *Licci*, 20 N.Y.3d at 339).

**1. Transacting Business in New York**

Ev&Ex has made a sufficient showing of personal jurisdiction over Defendants pursuant to N.Y. C.P.L.R. § 302(a)(1). Siblock, in his role as Senior Vice President of a New York-based company, "was in daily communication with Ev&Ex members and employees" who were based out of the agency's New York headquarters, in support of "Ev&Ex's New York business operations and clients' involvement in New York events." (ECF No. 17 ¶ 7.) He was also paid out of Ev&Ex's New York bank account. (*Id.*) Siblock's employment with a New York-based company—and close working relationship with employees and projects based out of New York—constitute a "business transaction" in New York for the purposes of personal jurisdiction. The fact that Siblock is domiciled in Texas does not alter this analysis: "Where an employee makes his living by working for a New York-based company, working from home does not undermine that employee's New York contacts where 21st-Century technology enables him to maintain consistent contacts with his employer over email, phone, and remote log-on to the company's servers." *Peeq Media, LLC v. Buccheri*, No. 16-CV-5292, 2016 WL 5947295, at *3 (S.D.N.Y. Oct. 13, 2016) (cleaned up); *see also Mercator Risk Servs., Inc. v. Girden*, No. 08-CV-10795, 2008 WL 5429886, at *3 (S.D.N.Y. Dec. 30, 2008) (concluding that out-of-state

employees "transacted business" in New York under § 302(a)(1) because they "have interacted with their employer's New York headquarters, accessed data maintained by their employer in New York, availed themselves of the benefit of being employed by a New York company, and generated profits for a New York company"); *Opticare Acquisition Corp. v. Castillo*, 25 A.D.3d 238, 245 (2d Dep't 2005) ("Even assuming none of the appellants ever entered New York . . . , it defies logic and common sense to conclude that they did not transact business here, especially when the 21st-Century technology undoubtedly available to them to go about their work, such as access via computer to data [the employer] maintained in New York, conferred upon them the benefit of employment with a New York company[.]").

Derse has also "transacted business" in New York within the meaning of § 302(a)(1) by entering into a commercial relationship and executing a contract with Ev&Ex, a New York-based company. "Courts have found sufficient business contacts to support personal jurisdiction under CPLR § 302(a)(1) in situations where non-domiciliaries have entered into contracts with New York-based companies." *LG Cap. Funding, LLC v. M Line Holdings, Inc.*, 422 F. Supp. 3d 739, 753 (E.D.N.Y. 2018). Here, the NSA between Derse and Ev&Ex governed, among other things, the handling and disclosure of confidential and proprietary information generated and stored in New York (*see* Opp. at 15; ECF No. 17-7), contained a New York choice-of-law provision (*see* ECF No. 17-7 ¶ 16), and was executed between the parties "in anticipation of a commercial partnership involving Derse working with limited, specific Ev&Ex clients, as well as pitching new clients jointly" (ECF No. 17 ¶ 14). This negotiated contractual relationship, far from the "[r]andom, fortuitous, or attenuated contacts" generally found insufficient to establish jurisdiction, *Rollo v. Escobedo*, 16-CV-6923, 2017 WL 2600107, at *3 (S.D.N.Y. June 15, 2017) (quotation marks omitted), "provided fair warning of the possibility of [Derse] being subject to

the jurisdiction of New York," *D.H. Blair*, 462 F.3d at 105 (finding sufficient business contacts to support personal jurisdiction where the defendants "entered into a brokerage account agreement with [the plaintiff] and executed numerous stock trades through [the plaintiff's] New York offices on various New York exchanges").

Defendants correctly observe that "the mere fact that an out-of-state defendant enters into a contract with a company headquartered in New York does not establish the requisite minimum contacts unless that contract projects the defendant into the New York market." *Navaera Scis., LLC v. Acuity Forensic Inc.*, 667 F. Supp. 2d 369, 375 (S.D.N.Y. 2009) (cleaned up). (Reply at 6.) But the NSA was executed in anticipation of a more substantial commercial relationship between Ev&Ex and Derse that would indeed "project [Derse] into the New York market," *Navaera*, 667 F. Supp. 2d at 375, not least by introducing Derse to some of Ev&Ex's existing New York-based clients and including Derse in efforts to co-pitch prospective New York-based clients, such as Diligent Corporation.[1] (*See* ECF No. 17 ¶ 14.) The contract at issue in *Navaera*, by contrast, which allowed an out-of-state company to sell certain products to customers in Canada in exchange for a commission from a company based in New York, had no broader discernible impact on the New York market. *Navaera*, 667 F. Supp. 2d at 371; *cf. ABKCO Music, Inc. v. McMahon as Tr. of Andrea Marless Cooke Fam. Tr.*, 175 A.D.3d 1201, 1201 (1st Dep't 2019) (finding no business transaction under C.P.L.R. § 302(a)(1) where a nonresident's only connections to New York were his requests by letter, telephone, and/or email that a New York-based company send him payments due under a royalty agreement).

---

[1] The Court takes judicial notice of Diligent Corporation's headquarters based on Securities and Exchange Commission filings. *See* "Diligent Corp," Company Information, EDGAR Company Search Results, https://perma.cc/BD6L-DSS8; *cf. Wright-Upshaw v. Nelson*, No. 13-CV-3367, 2014 WL 692870, at *1 n.1 (E.D.N.Y. Feb. 19, 2014).

Because Defendants have, through these contacts, "purposefully avail[ed] [themselves] of the privilege of conducting activities within New York," *Licci*, 673 F.3d at 61 (quotation marks omitted), the Court concludes that Ev&Ex has made an adequate showing that Defendants have transacted business in New York within the meaning of § 302(a)(1).

**2. Nexus**

Ev&Ex's causes of action also arise out of Defendants' New York business transactions. Ev&Ex brings claims of breach of fiduciary duty and faithless servant doctrine against Siblock, both of which stem from his employment relationship with Ev&Ex. (*See* Compl. ¶¶ 45-49, 54-59.) "[A]n alleged breach of a duty to a New York-based employer has been held to satisfy the long-arm statute's 'nexus' requirement." *Peeq Media*, 2016 WL 5947295, at *4; *see also LeCroy Corp. v. Hallberg*, No. 09-CV-8767, 2010 WL 3958761, at *4 (S.D.N.Y. Oct. 4, 2010) (finding nexus where the defendant "entered into [a] Confidentiality Agreement with his New York-based employer" and the claims "arise out of [the defendant's] alleged breach of the Confidentiality Agreement"); *Mercator Risk Services*, 2008 WL 5429886, at *4 (same). Similarly, Ev&Ex's claims against Derse are all predicated on Derse's alleged breach of the NSA, which is the very same business transaction that ties Derse to New York for the purposes of C.P.L.R. § 302(a)(1). (*See* Compl. ¶¶ 23-43.) There is therefore plainly an "articulable nexus" between Ev&Ex's claims against Derse and Derse's business transaction in New York. *Best Van Lines*, 490 F.3d at 246.

Defendants retort that "New York federal district courts routinely reject attempts to establish jurisdiction where the asserted New York contacts are not causally connected to the claims." (Reply at 4.) But New York courts "have consistently held that causation is not required, and that the inquiry under the statute is relatively permissive." *Licci*, 20 N.Y.3d at 339. And unlike the cases relied on by Defendants, *see Navaera*, 667 F. Supp. 2d at 376; *La Piel, Inc.*

*v. Richina Leather Indus. Co.*, No. 10-CV-1050, 2013 WL 1315125, at *14 (E.D.N.Y. Mar. 29, 2013), where there was little overlap between the defendants' New York contacts and the plaintiff's causes of action, here the connection between the parties' employment and commercial relationships, on the one hand, and Ev&Ex's alleged breaches of duties inherent in those relationships, on the other, is clear.

Accordingly, the Court concludes that Ev&Ex has made a prima facie showing of jurisdiction under C.P.L.R. § 302(a)(1).

**B. Due Process**

The Court turns next to constitutional due process. "To establish personal jurisdiction over a defendant, due process requires a plaintiff to allege (1) that a defendant has certain minimum contacts with the relevant forum, and (2) that the exercise of jurisdiction is reasonable in the circumstances." *Eades v. Kennedy, PC L. Offs.*, 799 F.3d 161, 168-69 (2d Cir. 2015) (quotation marks omitted). Ultimately, the exercise of jurisdiction must "comport with fair play and substantial justice." *Id.* (quoting *Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 170 (2d Cir. 2013)). "Although the constitutional due process issue is a separate question, ordinarily if jurisdiction is proper under the CPLR, due process will be satisfied because [CPLR] § 302 does not reach as far as the constitution permits." *Transaero, Inc. v. Chappell*, No. 13-CV-5752, 2014 WL 1783732, at *8 (E.D.N.Y. May 6, 2014) (cleaned up).

**1. Minimum Contacts**

In evaluating whether there are sufficient minimum contacts for purposes of the due process inquiry, courts "look to the totality of Defendants' contacts with the forum state." *Chloe*, 616 F.3d at 164. Sufficient contacts "exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Eades*, 799 F.3d at 169 (quotation marks omitted). "[T]he commission of some single or occasional acts

of the corporate agent in a state may sometimes be enough" to establish minimum contacts. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quotation marks omitted).

Here, Siblock was a full-time employee of Ev&Ex, a New York-based company, who worked closely with employees and projects based out of New York and was paid out of a New York bank account. (ECF No. 17 ¶ 7.) "Such employment relationships evince an expectation that an out-of-state defendant may be haled into court in New York." *Peeq Media*, 2016 WL 5947295, at *4; *see also Mercator*, 2008 WL 5429886, at *4 (finding sufficient minimum contacts where "Defendants purposely engaged in a major contractual relationship—an employment relationship—with a New York corporation"). Derse also "purposefully availed itself of the privilege of doing business in" New York, *Eades*, 799 F.3d at 169 (quotation marks omitted), by entering into a contractual relationship with Ev&Ex that was governed by New York law and covered, among other things, the handling of confidential and proprietary information generated and stored in New York. (*See* Opp. at 15; ECF No. 17-7.) Moreover, the contract was executed in anticipation of a more substantial commercial relationship between Ev&Ex and Derse, in which Derse would work with some of Ev&Ex's New York-based clients and co-pitch prospective customers, including customers based in New York, in conjunction with Ev&Ex. (Compl. ¶ 14.) In light of these contacts, Derse "should have reasonably foreseen the possibility of being haled into a New York court in the event of a dispute." *Buffalo Intelligent Tech. Sys., LLC v. Mar., LLC*, No. 24-CV-1111, 2025 WL 2099969, at *8 (W.D.N.Y. June 10, 2025), *report and recommendation adopted*, No. 24-CV-1111, 2025 WL 2097443 (W.D.N.Y. July 25, 2025).

**2. Reasonableness**

"While the exercise of jurisdiction is favored where the plaintiff has made a threshold showing of minimum contacts at the first stage of the inquiry, it may be defeated where the

defendant presents 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Metro. Life Ins. Co.*, 84 F.3d at 568 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). The Supreme Court has outlined several factors that must be considered when determining the reasonableness of a particular exercise of jurisdiction, including: "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." *Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*, 480 U.S. 102, 113 (1987).

Defendants contend that Siblock, who resides in Texas, "would face a substantial burden litigating in New York," and that "most of [Derse's] witnesses and relevant documents are located" in Wisconsin, where Derse is based. (Mem. at 21.) It may be true that Defendants would face some hardship defending this case in New York, since neither is domiciled in this state. But "generalized complaints of inconvenience arising from [a defendant] having to defend [itself] from suit in New York do not add up to a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Chloe*, 616 F.3d at 173 (quotation marks omitted). The Second Circuit has also observed that "the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago," *Metro. Life Ins. Co.*, 84 F.3d at 574, and has cautioned that "dismissals resulting from the application of the reasonableness test should be few and far between," *id.* at 575. In addition, "any burden placed on the defendant[s] is tempered by the fact that [Ev&Ex] has a compelling interest in obtaining convenient and effective relief in a United States court," and that "New York has a great interest in adjudicating this dispute, because [Defendants'] activities implicate New York's interest in enforcing its laws and providing a forum where its corporations

may seek redress." *Centrifugal Force, Inc. v. Softnet Commc'n, Inc.*, No. 08-CV-5463, 2009 WL 1059647, at *8 (S.D.N.Y. Apr. 17, 2009) (quotation marks omitted).

"In sum, [Defendants'] showing on these factors does not convince us that this case is the 'exceptional situation' where exercise of jurisdiction is unreasonable even though minimum contacts are present." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 130 (2d Cir. 2002). Accordingly, the Court concludes that due process permits the exercise of personal jurisdiction over Siblock and Derse.

## V. Conclusion

For the foregoing reasons, Defendants' motion to dismiss the complaint is DENIED.

Defendants shall file an answer to the complaint within 14 days of the date of publication of this opinion and order. *See* Fed. R. Civ. P. 12(a)(4)(A).

The Clerk of Court is directed to close the motion at Docket Numbers 10 and 11.

SO ORDERED.

Dated: September 21, 2026
New York, New York

J. PAUL OETKEN
United States District Judge